The next case on the calendar is Zuma Press v. Getty Images. May it please the Court, Your Honors, James Treman, Leibowitz Law Firm. Can everyone hear me? Yes. Please go ahead. Thank you. Yes. So I'd like to thank the Court for the opportunity to appear at today's hearing. On today's appeal, plaintiffs who are copyright holders are respectfully challenging the summary judgment dismissal of two counts, one for copyright infringement and the other for Getty's violation of the Digital Millennium Copyright Act. I'd like to first address the infringement claim. The principal issue is whether the district court erred in resolving summary judgment in Getty's favor on its license defense, particularly as there is conflicting factual evidence concerning termination of that license. The analysis of the license defense hinges on New York contract law, and there are several contract principles at issue. The first, where a written contract does not contain a provision requiring that termination be in writing, it may be terminated by oral agreement or by implication through the Congress of the Parties. And that's the Strauchowski case in the Fourth Department, and it's also the Delansky, which is not cited in our brief, but it's at 92 AD 31286. The second principle is whether a contract has been terminated or canceled by the Congress of the Parties is generally a question of fact of the jury, or the evidence is conflicting against Strauchowski. Third, contracts containing no definite term of duration are terminable at will. And four, a party may rescind the contract due to failure of consideration or an inability to perform that contract after it is made. Now here, with respect to the fact, the license defense involves the contractual interpretation of a series of agreements, but the root source of the defense is a one-page royalty resurrection agreement signed by Zuma and Newsport on November 3rd of 2011. This is the only agreement pertaining to Getty's license defense that Zuma actually signed. Now the resurrection agreement involves the rights and obligations of three parties. Number one, Zuma, the licensor of the photograph. Number two, Newsport, the licensee. And number three, Corbett, who was the predecessor and interest to Getty, was essentially a sub-licensee by virtue of a 2004 contract between Newsport and Corbett. Now like with any contract, to determine whether it's enforceable, it's critical to analyze the valuable consideration or bargain for exchange. By entering the redirection agreement, Zuma acquired the right to receive a more favorable royalty rate, a 50% split, based on Newsport's 2004 contract with Corbett. The consideration that Zuma provided was the license conveyed to Newsport, which in turn had the 50% split. With respect to Newsport, they received administrative help from Zuma's accounting department, as long as Les Walker, Newsport's CEO, served as Zuma's independent contractor. And the consideration provided by Newsport was they agreed to redirect the payments to Zuma. Finally, we have Corbett, who essentially became a third-party beneficiary of the redirection agreement because it acquired a right to market additional images on its website. But Corbett did not provide any valuable consideration for entering the agreement and was not a signatory to the redirection agreement. So in terms of the argument, the plaintiff's position is that the redirection agreement was effectively terminated as of January 2013, or February 2013 at the latest, when Walker resigned from Zuma and the license was revoked. That's the point in time when both Zuma and Walker ceased receiving the benefit of the Both parties then requested that Corbett remove the Zuma images from the Corbett's website, which the factual record shows was ultimately done. The district court found that a writing was required from Newsport to terminate the redirection agreement. But the redirection agreement does not require a writing to terminate and does not contain a term of duration. So the Streichowski rule is controlling the contract to be terminated by mutual assent. So there's issues of material fact which remain unresolved as to whether the contracting parties manifest an intent. From Corbett's point of view, this is Judge Schen, from Corbett's point of view, I mean, how does it know that the redirection agreement is terminated? I mean, it certainly was reasonable for Corbett to say, we're happy to do this, but we want Newsport's written consent or approval. Well, you know, the issue with that is there's no question that Les Walker, after resigning from Zuma, repeatedly instructed Corbett to remove the images from the website. And that, and the record is replete. So there was oral communication made. Granted, we acknowledge that Les Walker- But does he have, I mean, does he have authority? I mean, once he's resigned, it's not apparent that he even has authority to undo it. Well, I mean, the district court's entire holding hinges on Walker's and Newsport's revocation of the license. And what the district court held was that Walker never gave written notice to Corbett that these images had to be removed. But what the record shows is that Walker repeatedly called Seth Greenberg, who is Corbett's representative, and said, please take the images down. Zuma was also saying, take the images down. Ultimately, that happened. So even though there was no writing, by the expressed terms of the agreement, no writing was required. And that's why we say the Strachowski rule of controlling. We don't need to have a writing to terminate that agreement. The comments of the parties was clear. They manifested a mutually binding assent to revoke the license. None of the parties to that redirection agreement were receiving any benefits whatsoever after January of 2013. And from Corbett's perspective, and this was the whole basis of the district court's granting of the motion for reconsideration, the district court did find that there was issues of fact as to whether the photographs were removed. Now, I don't think there's any dispute. The photographs were definitely removed from the public-facing website. They somehow ended up in some back-end archive and ultimately got transmitted to Getty, but that's of no legal consequence. What's of legal consequence is that the redirection agreement was terminated. So I'd like to point out one more thing on the infringement claim before I move to 1202, if there's not any more questions, which is that they're arguing that even if the redirection I mean, this argument is meritless. Number one, let me just let me just ask. I understood their argument to be that the redirection agreement is essentially not the relevant. It's irrelevant when it was revoked because it was just about the direction of royalties, not the conferral of licensing rights. And in the redirection agreement, which your client signed, there's a reaffirmation to Corbis that New Sport had the authority to grant all rights and licenses under the New Sport Corbis contract. So why that for all images produced under that contract, which would include the images of your client. So why doesn't that redirect us back to the New Sport Corbis contract, which did have to be terminated in writing? Well, first of all, the entire New Sport Corbis agreement was never going to be terminated because it was a whole bunch of other photographs that were controlled by so the issue of terminating the entire agreement, that's not really an issue. The New Sport Corbis agreement is silent with respect to what happens if certain photographs that have been conveyed to Corbis are suddenly revoked. There's nothing in the New Sport Corbis contract that says that. Number two, Zuma didn't sign that agreement. Zuma's not a party to that agreement. It's not even clear that Zuma knew what the terms of that agreement were. It was receiving benefits under the agreement, right? It received. Right. And so and so the argument is that as long as Zuma was receiving a contract, which is true, which was for a period of about 13 months, that that agreement was binding and that Corbis had the right to exploit those images. But as soon as they stopped receiving the benefit, Walker was no longer receiving the benefit. You know, our clients were no longer receiving a benefit. Corbis can't just then continue exploiting the agreement, particularly when Corbis itself removed the images. They didn't even believe there was a license anymore. If they had truly believed there was still a license, they never would have removed the images from the website. So the whole transaction was unwound. It was rescinded. It was abandoned three years before Getty even got involved. And that's the basis. And that's the basis for our appeal, that this was this was terminated. And what they're saying is that once Zuma sort of committed to the redirection agreement, that these photographs were somehow, you know, that they relinquished control of the photograph essentially forever because the new sport Corbis agreement, Zuma has no control over that agreement. And that agreement continues into perpetuity. It automatically renews every year. So that is not a tenable position. We did not give them the right to that, to those images that period of time. Let me move, if I have a minute, to the 1202 claim, which is which is more complex. But there are four elements to the claim under Mangelberg's BuzzFeed. The first is there's no dispute as to whether this qualifies as CMI. The second element, there's no dispute that the CMI was altered. Oh, sorry, that was myself. And there's no dispute that the CMI was altered because Getty stamped this watermark on the image and also altered the credit line. So that leaves us with a double standard requirement, which is a constructive knowledge standard and an actual knowledge standard. The constructive knowledge standard is essentially imposed on sophisticated parties. Here, there's no more sophisticated copyright there than Getty. If it's you know, they've been held liable for under Section Volvo 2A. They are a massive, probably the largest stock photography agency in the world. They we the court can impose constructive knowledge that they should have known that when they posted these images online, the CMI had been altered without the permission of Zuma. And then in terms of actual knowledge, look, it presents a question of fact. The parties are disputing. I thought the I thought that the metadata contained Zuma's name in it and that that had been left in there, which which seems to negate many instances I enter. Yeah, I mean, I understand the argument and I realize that this is a novel issue, but basically our position is that even though Zuma's name remained in the metadata, that Getty was exploiting those images to give a false impression that they were licensed when they actually weren't. And that's the issue. I mean, it's not necessary that the CMI be actually removed. It could just be altered. So the statute contemplates that an alteration of the CMI, even if it contains the original copyright holder's name, that that itself can be actionable. And I haven't seen any case law that says otherwise. Granted, there's not any case law on it because it's a novel issue. Mr. Freeman, your time has expired. Do you want to use part of your rebuttal time to finish this argument or reserve? Yes, Your Honor. Thank you. Thank you. Mr. Mark. Thank you, Your Honor, may it please the court, I'm Benjamin Marks from Wild Gottschall and Manjis on behalf of Appellant and Cross Appellee Getty Images. With the court's permission, I'd like to reserve one minute for rebuttal on the cross appeal. None of the appellant's arguments call into question the district court's well-reasoned conclusions that under the unambiguous terms of the relevant agreements, Getty Images' display and distribution of the photographs at issue was authorized and Getty Images had no reason to think otherwise. The undisputed facts show that Getty Images obtained valid contractual rights to display and distribute the photos to an unbroken chain of authorization that began with Zuma itself. That is dispositive of all of the claims in the case. The grant of summary judgment to Getty Images should be affirmed. The district court's only error was to deny Getty Images' application for its reasonable attorney's fees under the Copyright Act and the Lanham Act on this record. I'd like to come back to the actions by the lead plaintiff, Zuma Press, that precipitated this dispute because that will illustrate that appellant's counsel has mischaracterized the relevant agreement that leads to this, that leads to the chain of authority. Judge Livington's question about the Newsport-Corvus contract was exactly on point. Zuma had its own contractual relationship with Corvus to distribute Zuma's photographs, including both photographs that Zuma owned and those that Zuma licensed on behalf of others. Zuma became aware that another photo agency, Newsport, had a contract with Corvus that paid a higher royalty rate than Zuma's contract did. So it entered into an arrangement with Newsport's CEO by which Zuma would start submitting its own photos to Corvus under the Newsport contract using Newsport's file transmission protocol rather than its own. When Zuma did so, those photos became part of the Newsport collection on Corvus's system, and they appeared on Corvus's website with Newsport identified as the source. That's at Joint Appendix 1235 to 37. The whole point of using Newsport's file transmission protocol was so that Corvus would treat the photographs as submitted under the Newsport contract and pay a higher royalty rate when Corvus licensed the photographs to others. Zuma took the money. Zuma cashed the checks. They can't complain now that Corvus treated the photographs as licensed under the Newsport contract and as subject to its terms. Zuma's own CEO agreed in writing with both Newsport and Corvus that Newsport was the authorized licensor of the photos Zuma was submitting under the Newsport contract. That's the redirection agreement at Joint Appendix 341. The relevance of the redirection agreement is that it serves to confirm what the parties already knew, which was that Zuma had authorized Newsport to license the photos to Corvus under the Newsport-Corvus contract. Zuma wanted to be paid directly by Corvus. Corvus agreed to send the checks directly to Zuma instead of to Newsport, but only if everyone reaffirmed in writing that Newsport was the licensor. The terms of the Newsport-Corvus contract, as Judge Livingston's question recognized, are fatal to appellant's claims. It contained a minimum term of three years and a survival term of another three years. That covers the entire period at issue in this case. It allowed Corvus to assign its rights and to sub-license its rights to other agencies. It required written notice of termination of the agreement by Newsport. It's undisputed that Newsport never provided written notice of termination. You heard Mr. Freeman acknowledge that earlier during his argument. And it wouldn't have mattered for purposes of this dispute anyway, because the survival term still would have covered the entire period that affects Getty Images in this action. There's no dispute that Corvus sold its business to VCG, which is also called UGI by the district court, and that Corvus assigned all of its rights. This is Judge Hinn. How do you respond to the argument that Walker resigned? Once Walker resigned, he started giving oral notice to terminate the redirection agreement. And why is that not effective? Because the contract called for written termination. Corvus repeatedly made clear to Zuma that written termination... Well, when you say the contract, the contract called for written termination, that's the Zuma-Corvus contract, right? I mean, why? Correct. And there was no such provision in the redirection agreement. I mean, this is their argument. So how, what's the response? Yeah, the response is that it doesn't matter because as the district court realized, recognized in its opinion, it doesn't matter if the photos had already been granted for the six-year term in 2011 and 2012. So even if the redirection agreement, which just simply addresses where the checks are going to be sent, even if that got terminated at some later point in time, that doesn't terminate Corvus' rights to use the photos for the entirety of the license period, which had already been granted. If you give an agent authority to license your works, you can terminate the agent's authority to grant new licenses going forward, but you can't terminate the licenses that the agent has already done with your authorization. And that's exactly what's happened here. That's the best case scenario for their argument. We don't, we don't agree that the redirection agreement was, was effectively terminated. Or I should say, we don't agree that Newsport's authority to license the works was terminated, but it's irrelevant to the district court's holding and it's not material to the case because there's no dispute that the Newsport-Corvus contract required written termination that Corvus repeatedly advised Newsport and Corvus that written notice was required, and it is absolutely undisputed that no written notice was ever provided. I'll turn briefly, unless there are further questions on that, I'll turn to the DMCA claims. The DMCA claims fail for an additional reason. There's no evidence of any intent by Getty Images to infringe. The undisputed record shows precisely the opposite. Getty Images obtained representations and warranties from BCG as to its rights in all of the photographs obtained from Corvus prior to ingesting any of them into its system. Zuma's own CEO testified that it's standard industry practice and Zuma's own practice to rely on representations and warranties from other agencies rather than investigating the provenance of individual photos one by one. Getty Images, keep in mind, this migration of photos, this ingestion of the Corvus photos was 7 million photos. Getty Images worked extensively with Corvus over a period of weeks to understand Corvus' systems and the metadata for all of the photographs. Getty Images did extensive testing of tens of thousands of images to ensure that photographs would be migrated correctly and successfully from Corvus to Getty Images. It reached out to each rights holder identified by Corvus as the source of the photographs in Corvus' systems to obtain their separate approvals prior to migrating the images, even though they had the contractual right to migrate the images without that. Corvus had identified NewSport as the source and original licensor of all of the images at issue. NewSport specifically authorized that migration of its entire collection from Corvus over to Getty Images in advance of any transfer. And against this record of careful and meticulous licensing, testing and approvals, the notion that Getty Images intended to abet or facilitate copyright infringement does not pass the straight face test. And I'd just like to follow up on a question that Judge Park asked earlier, which is the anomalous placement of the Zuma Press credit information in the caption field rather than the source field of the Corvus metadata that got carried over. I think Judge Park's question is also exactly on point. That negates any inference that Getty Images was intending to infringe. The fact that we didn't know, that Getty Images didn't know that the Zuma Press reference was in there and left it in there, that negates the intent to infringe. And there's a recited case on page 38 of our opening brief, the Mills v. Netflix case out of the Central District of California from last year that makes exactly that point, that the inclusion of the plaintiff's information in the metadata negates the intent. It's not evidence to the contrary. And even before reaching Getty Images authorization defense, the district court had correctly concluded that appellant section 1202 claims failed as a matter of law. I'd like to just touch briefly on what we contend is the only mistake that the district court made, which was the denial of reasonable attorney's fees. The Copyright Act permits reasonable attorney fee awards to successful litigants and successful defendants are to be treated no less favorably than successful plaintiffs. So does the Lanham Act. This case never should have been brought. Zuma Press and its counsel knew because Getty Images told them before this case was ever filed, that Getty Images had acquired the rights to the Corbis collection. What, Judge Park, what in your view is required for the district court to say about attorney's fees? I mean, is it required if it thinks that the request is meritless to go through each argument and explain why, or isn't it enough to state the standard and that it doesn't sound that it's met? We think that more than stating the standard is required, Your Honor. I don't think we're asking for a treatise, but what we, the instance that we have here is simply a statement of the factors and a conclusion. And so there's no basis for this court to evaluate what the district court's reasoning was and make the determination as to whether the district court abused its discretion, because we don't even know how the court balanced the factors and how it interpreted the factors here. And that's why we think at a minimum remand is appropriate for particularized findings with respect to the factors. Thank you, Mr. Marks. And I know you've reserved one minute rebuttal time, Mr.  Yes. Thank you, Your Honor. With respect to the infringement, the one point I wanted to address was that Mr. Marks had said that they enjoy a six year survival term, but that, but, but the agreement that he's referring to is a, is a April, 2012 agreement, which was signed six months after the royalty redirection agreement. So that agreement cannot be controlling. The controlling agreement is the new sport Corbett's contract that dates back to 2004. So I'm like, I like to make that point. With respect to the, the 1202 claim, what really, what we're talking about here is the alteration of the CMI. What makes this distinguishable from Mills versus Netflix is that in Mills versus Netflix, there wasn't, you know, they had included the plaintiff, you know, CMI, but that was, but that was it. They didn't add a whole bunch of other, you know, credits. In this case, they said that left Walker was the, was the photographer of the photographs, and they also placed a watermark on the image. So that makes this distinguishable. With respect to the issue of actual knowledge, there's a long, it's not such a long passage. It's at JA 1105 to 1111 is left Walker's deposition transcript. And what he said specifically in his sworn testimony was that during the ingestion process, the migration process, he warned Getty that these images, the zoom images were not supposed to be in the new sport archive. Now they're claiming Getty's claiming, Oh no, these conversations took place after we found the infringement. But that's not what, that's not what Walker said at 1108. He said, Getty set up an area to watch my feet come in, see what images were being ingested. And then I noticed images with the Zuma byline. And he says, now this is all, you know, all happened during the time of ingestion. So what we're saying is that if Walker had warned Getty during the ingestion process, these images were not supposed to be there, that serves as a factual predicate for the actual knowledge. They say he knew the CMI was being altered and that they did not have Zuma's permission. Um, Mr. Freeman, can I just ask you to, um, address very briefly, uh, the district court's analysis of, of the attorney's fees issue? I mean, it was very, uh, cursory and, and how do we have a basis to review that given that it's really just a statement of the standard? Well, you know, I agree that it is perfunctory. And I mean, there was some case law that we cited in our brief stating that, you know, it's an easily, you know, if the court can determine that the claims are objectively reasonable and properly motivated, and certainly the district court was in the best position to make that determination after three years of hard fought litigation. I think four to five substantive motions. Um, you know, many court appearances and, you know, the court summary conclusion is not an abuse of discretion because the court was in the best position to make that determination. And whether or not a claim is objectively unreasonable, really it can be determined readily. It's a readily, um, it's an easily defined term. I mean, typically section 505 really comes in on rule 12 motions where a plaintiff comes in with an objective unreasonable claim and it gets dismissed right off the bat. The one thing that I would like to address on that claim is that the principal argument that they're making for why it was objectively unreasonable. They're arguing that Zuma was making claims to 48,000 images, but it ultimately only said that it had 4,000 images. But I'd like to direct the court to ECF number 256 was, which was Zuma's motion for summary judgment. We had made a motion for summary judgment on the question of ownership and validity of copyright. And in painstaking detail, we made the case to 31,733 images, all of which were supported by declarations and by copyright registrations, there's another 11,500 that are pending before judge Schofield in a separate case. And then the balance is about 4,700. That was for Sean file who was an intervener. So basically the 48,000 that we initially claimed the complaint way back in 2016, they're all accounted for. And, and, and Getty is saying on that position, Oh, we're raising that issue for the first time in appeal. No, there's an entire summary judgment motion, which validates the copyright registrations at issue in this case with respect to the other arguments and It's mostly just a hit job against Richard Leibovitz, which is common, even understandable, but there's really no conduct that they brought the district court detention during the three years of litigation, they never made a motion for sanctions, they never made a motion to compel we dealt with them on every discovery issue, there's no litigation conduct of any kind, and it's clearly properly motivated to create close calls. A complex series of contracts that have to be evaluated. There's novel issues on 1202. This is just not the type of claim that courts would typically award a section 505, the shift, particularly in the, in the large amount that they're seeking against a smaller company and individual copyright holders. So I thank the court for its time. It doesn't have any more questions. I've included my presentation. Thank you, Mr. Freeman, Mr. Mark. Thank you, your honor, three quick points I want to make. The first is Mr. Freeman raised the 2012 agreement, which contained the three year survival term. He doesn't even, even he doesn't contend that the redirection agreement was terminated prior to 2013. And the 2012 agreement ratified the inclusion of all of the photos submitted to date and, and bounded to its terms. So I don't know why he thinks that that's not the controlling agreement when it was entered into while new sport indisputably had authority to license Zuma presses photos. Second point is with regard to Mr. Walker's testimony, he is confusing the timeline and leaving out the critical page, which is joint appendix 1104. I direct the court to that where Mr. Walker testifies unequivocally that he had no conversations with Getty images about Zuma press until after the photos had appeared on the website and Zuma press had, had, had raised the issue with Getty images and Getty images had reached out to Mr. Walker as part of its own investigation of the claims that testimony is uncontroverted and the final point I'd like to address just in the context of, of the attorney's fees is Mr. Freeman's apparent argument that we were required to bring motions to compel and motions for sanctions before the district court and further burden the court, uh, with, uh, uh, with, uh, uh, the plaintiff's conduct here in order to receive attorney's fees under the copyright act, we're not appealing the denial of the sanctions motion. We're not required to burden the court with extra motion practice in order to get attorney's fees under the copyright as successful litigants. I that's certainly not the rule. They don't cite any case law for it. And I think it would be exceedingly bad. Uh, uh, uh, a bad policy to embrace because it will only, uh, increase and set a standard whereby people have to move to compel and move for sanctions in order to get their attorney's fees under the copyright act. That's not the point of section 12, uh, section five Oh five or section 12, uh, Oh three, or the relevant standard under the Lanham act. Thank you, your honor. Thank you. Thank you, Mr. Marks, Mr. Freeman. And, uh, nicely argued. We will.